ORIGINAL

Filed &
RECEIVED
HARRISBURG, PA

MAY 11 2001

MARY E. D'ANDREA, CLERK
Per _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFERY P. MOSER,                      :
                                       :
        Plaintiff,                     :      Civil No. 1:00-CV-1846
                                       :
        v.                             :      Judge William W. Caldwell
                                       :
KENNETH KYLER, et al.,                 :      JURY TRIAL DEMANDED
                                       :
        Defendants.                    :

---

## CORRECTIONS DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Shawn P. Kenny
Assistant Counsel
Attorney I.D. No 51797
PA Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444

# TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3,4

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

ALLEGATIONS

     Parties to the Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . 5

     Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

     Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

MOTION TO DISMISS STANDARD . . . . . . . . . . . . . . . . . . . . . . . .8

ARGUMENT

     THE COURT SHOULD DISMISS THE COMPLAINT
     BECAUSE PLAINTIFF HAS NOT ALLEGED THAT
     HE EXHAUSTED HIS ADMINISTRATIVE REMEDIES . . . . . . . . . . . . .10

     THE COMPLAINT MUST BE DISMISSED WITH
     PREJUDICE BECAUSE THE CORRECTIONS
     DEFENDANTS ARE NOT MEDICAL PROVIDERS
     AND ARE INCOMPETENT TO SECOND-GUESS
     THE DECISIONS OF MEDICAL PROVIDERS FROM
     WHOM MOSER, BY HIS OWN ADMISSION,
     HAS RECEIVED EXTENSIVE CONSULTATION AND
     TREATMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

     THE CORRECTIONS DEFENDANTS ARE ENTITLED
     TO QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

# TABLE OF CITATIONS

## CASES

Booth v. Churner, 206 F. 3d 289 (3d Cir. 2000); cert granted, 2000 W.L. 798208

U.S.L.W. 3774 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 15

Brown v. Toombs, 139 F. 3d 1102 (6th Cir. 1998) cert denied, 119 S. Ct. 88 (1998) 12, 13

City of Pittsburgh v. West Penn Power Co., 147 F. 3d 256 (3d Cir. 1998) . . . . . . . . . . . .9

Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed. 2d 80 (1957) . . . . . . . . . . . . . . . 8

Curtis v. Horn, Civil Action No. 3:00-CV-1149, (M.D. Pa. 12/18/00) . . . . . . . . . . 12, 13

Doe v. County of Centre, 2001 W.L. 214005 (3d Cir. Pa. 3/5/01) . . . . . . . . . . . . . .21, 22

Durmer v. O'Carroll, 991 F. 2d 64 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18, 19

Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976) . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) . . . . . . . . . . . . . . . . . . . . . . .16

Flanagan v. Shively, 783 F. Supp. 922 (M.D. Pa. 1992) . . . . . . . . . . . . . . . . . . . . . 17, 18

Geisler v. Hoffman, No. 99-1971 (3d. Cir. 9/12/00) (unreported) . . . . . . . . . . . . . .14, 15

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Iglesias v. Roth, No. 00-3069, 2000 U.S. Dist. LEXIS 16999 (E.D. Pa. 11/28/00) . . . . 13

Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754 (3d Cir. 1979) . . . . . . . . . . .18

Johnsrud v. Carter, 620 F. 2d 29 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McAleese v. Owens, 770 F. Supp. 255 (M.D. Pa. 1991) . . . . . . . . . . . . . . . . . . . . . . 17

Morse v. Lower Merion School District, 132 F. 3d 902 (3d Cir. 1997) . . . . . . . . . . . . . .9

Nyhuis v. Reno, 201 F. 3d 65 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 15

Pennsylvania House, Inc. v. Barrett, 760 F. Supp. 439 (M.D. Pa. 1991) . . . . . . . . . . . . .8

Pension Benefits Guarantee Corp. v. White Consolidated Industries, 998 F. 2d 1192

(3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Peters v. Delaware River Port Auth., 16 F. 3d 1346 (3d Cir. 1994) . . . . . . . . . . . . . . . .9

Rouse v. Plantier, 182 F. 3d 192 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 22

Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L.Ed. 2d 90 (1974) . . . . . . . . . . . .8

Truhe v. Rupell, 641 F. Supp. 57 (M.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

White v. Napoleon, 897 F. 2d 103 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Whitley v. Albers, 475 U.S. 312 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

## STATUTES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13, 14

42 U.S.C. § 1997 e(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 10, 13

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . .5

Federal Rule of Civil Procedure 8(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rule of Evidence 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I.    PROCEDURAL HISTORY

On October 18, 2000, Jeffery Moser, an inmate at the State

Correctional Institution at Huntingdon (SCI-Huntingdon), filed a Civil

Rights Complaint pursuant to 42 U.S.C. §1983 (Doc. 1).

On May 1, 2001, Defendants Kyler, Baney, Erhard, Yarger, Chesney

and Nauroth (Corrections Defendants) filed a Motion to Dismiss under

Federal Rule of Civil Procedure 12(b)(6) and 42 U.S.C. §1997e(a) for failure

to exhaust administrative remedies.  This brief is filed in support of that

Motion.  On May 1, 2001, Medical Defendants Bardel, Mohadjerin,

Shumaker and Pollack also filed a Motion to Dismiss.

## II.    ALLEGATIONS

<u>Parties to the Motion to Dismiss</u>

This motion and supporting brief are filed on behalf of the six

Corrections Defendants: Kenneth Kyler, the Superintendent at SCI-

Huntingdon; Diana Baney, the Superintendent's Assistant and Litigation

Coordinator at SCI-Huntingdon; Dennis Erhard, Deputy Secretary of

Corrections for the Eastern Region of Pennsylvania; Patricia Yarger,

Corrections Health Care Administrator at SCI-Huntingdon; Joseph Chesney,

Superintendent at SCI-Frackville; and Linda Nauroth, Corrections Health

Care Administrator at SCI-Frackville.  Both SCI-Huntingdon and SCI-

Frackville are prison facilities operating under the authority of the

Commonwealth of Pennsylvania, Department of Corrections.

<u>Claims</u>

Moser contends he is entitled to injunctive relief as well as

compensatory, exemplary and punitive damages as the result of the alleged

denial of medical care while incarcerated at SCI-Frackville and SCI-

Huntingdon, respectively.  Specifically, Moser claims he has been denied

effective pain management, a spinal operation, treatment for hepatitis C

virus (HCV) and "possible cancer of a limpnoid [sic] and stones in his gland

in the throat, which surgery was recommended and refused by the Pa DOC

Ins. Company (H.M.O) and Camp Hill administrators [sic]."  (Doc. 1, page

1)  Moser also claims that he is legally disabled and entitled to protection

under the Americans with Disabilities Act (*Id.*) and that he has been

subjected to "ADA discrimination, as SCI-Huntingdon ignores all ADA

claims and complaints [sic]..."  (*Id.* page 9)

Although Moser attaches 134 pages of exhibits which supposedly

demonstrate that he exhausted his administrative remedies, he failed to

mention and attach a copy of a memorandum to him from Superintendent

Kyler dated October 4, 2000, which confirms that Moser's ADA complaint

6

was in fact resolved by having Moser transferred to SCI-Huntingdon on August 16, 2000, thus rendering that claim moot. (See Exhibit A)

By his own admission, Moser did not exhaust his claims against the SCI-Huntingdon Defendants since he did not exhaust his appeals. Moser also failed to exhaust because he did not request monetary relief, which he now seeks in court.

Summary of Arguments

Moser's complaint and the attachments reveal that at all times, Moser sought and received medical treatment. He challenges the nature of the care that has been provided and the decisions that have been made regarding his care, neither of which rise to the level of deliberate indifference to a serious medical need. Furthermore, despite attaching 134 exhibits to his complaint, Moser has not alleged that he in fact exhausted all remedies available to him under the Department of Corrections grievance system. Accordingly, Moser's complaint should be dismissed for the following reasons:

1.  Moser did not exhaust administrative remedies as required by 42 U.S.C. §1997e(a).

2.  The Corrections Defendants are not medical providers and under *Durmer v. O'Carroll*, 991 F. 2d 64 (3d Cir. 1993), none of them can be considered deliberately indifferent for failing to respond to

the medical complaints of a prisoner who has and continues to

receive medical treatment.

3.   The Corrections Defendants are entitled to qualified immunity

because they reasonably relied upon and are incompetent to

second-guess, the decisions of medical providers who have

provided treatment to Moser.

III.   MOTION TO DISMISS STANDARD

As this Court has said, the standards of review on a motion to dismiss

are "well-established":

> A complaint may not be dismissed for failure to state a claim upon
> which relief can be granted unless "it appears beyond doubt that
> the plaintiff can prove no set of facts in support of his claim which
> could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46,
> 78 S. Ct. 99, 102, 2 L.Ed.2d 80 (1957).  The court must accept all
> material allegations in the complaint as true and construe them in
> the light most favorable to the party opposing the motion. *Scheuer
> v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974);
> *Johnsrud v. Carter*, 620 F.2d 29 (3d Cir. 1980); and *Truhe v.
> Rupell*, 641 F. Supp. 57, 58 (M.D.Pa. 1985) (Rambo, J.).  Although
> the complaint is to be liberally construed in favor of the plaintiff
> (See: Fed. R. Civ. Pro. 8(f)), the court does not have to accept
> every allegation it contains as true.  Conclusory allegations of law,
> unsupported conclusions and unwarranted inferences need not be
> accepted as true. *Conley, supra*, 355 U.S. at 45-46, 78 S. Ct. at
> 102.

*Pennsylvania House, Inc. v. Barrett*, 760 F.Supp. 439, 449 (M.D.Pa. 1991)
(McClure, J.)

Furthermore, "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss." *Morse v. Lower Merion School District*, 132 F. 3d 902, 906, n. 8 (3d Cir. 1997).

On a motion to dismiss, the court is not limited to evaluating the complaint, but can also consider "indisputably authentic document[s] that a [moving party] attaches as an exhibit to a motion to dismiss if the [non-moving party's] claims are based on the [attached] document." *Pension Benefits Guarantee Corp. v. White Consolidated Industries*, 998 F. 2d 1192, 1196 (3d Cir. 1993).

The Court also has power to take judicial notice of the DOC's consolidated inmate grievance system available to all of its prisoners. *See* Federal Rule of Evidence 201(b); *Peters v. Delaware River Port Auth.*, 16 F. 3d 1346, 1356 n. 12 (3d Cir. 1994); see also *City of Pittsburgh v. West Penn Power Co.*, 147 F. 3d 256, 259 (3d Cir. 1998) (on a 12(b)6 motion, in addition to complaint, Court may properly look at public records). Indeed, in *Booth v. Churner*, 206 F. 3d 289 (3d Cir. 2000); cert granted, 2000 W.L. 798208, 68 U.S.L.W. 3774, the court affirmed Judge Nealon's decision to sua sponte dismiss a civil rights complaint for failure to exhaust, citing the DOC's three-part consolidated inmate grievance system. *Id.* at 292 n. 3.

IV.    ARGUMENT

THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE
PLAINTIFF HAS NOT ALLEGED THAT HE EXHAUSTED HIS
ADMINISTRATIVE REMEDIES.

The Prison Litigation Reform Act of 1996 provides, in relevant part,

that:

> [n]o action shall be brought with respect to prison conditions
> under section 1983 of this title or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. §1997e(a).

Moser presents three discrete claims in his complaint.  First, he claims

to be in "extreme pain and needs narcotic pain management and a spinal

fussion [sic] operation, as he will surely only get worse untill [sic] he is in a

wheelchair for the duration of his life."  (Complaint, page 6)  Moser also

complains that he "suffers from hep C, a terminal illness and possible cancer

of a limpnoid [sic] and stones in his gland in the throat, which surgery was

recommended and refused…"  (*Id*. at 1)  Moser indicates that he has been

told "His hep C will not be treated because he is past his min. [minimum

incarceration date] release date and the possible cancer of the throat gland

untill [sic], the swelling is out of control and larger, in both cases this means

Moser would not receive life saving available treatments."  (*Id*. at 8)

Despite Moser's 9-page narrative, the medical exhibits and 134 pages of attached documents, Moser has not exhausted his claims.

The Department utilizes a three-step grievance system starting with an initial inmate grievance, an appeal to the superintendent and an appeal to final review which is processed by Robert S. Bitner, the Chief Hearing Examiner. *See Booth v. Churner*, 206 F. 3d 289, 292 n. 2d (3d Cir. 2000) cert. granted 2000 W.L. 798208, 68 U.S.L.W. 3774 (U.S. 10/30/00); *see also* Exhibit B in support of Motion to Dismiss consisting of the Department's Consolidated Inmate Grievance Review System, DC-ADM 804, as amended. As can be seen by the revised DC-ADM 804, the new procedure is to file the initial grievance with the facility grievance coordinator with appeals taken to the facility manager and ultimately to the Chief, Secretary's Office of Inmate Grievances and Appeals.[*]

The law in this Circuit and in this district is clear: inmates must exhaust all available administrative remedies prior to filing suit without regard to whether those remedies may be futile. The Third Circuit has recently issued two significant decisions which strictly enforce the exhaustion requirement. In *Nyhuis v. Reno*, 204 F. 3d 65 (3d Cir. 2000), the

---

[*] Moser's voluminous exhibits include 6 seperate grievances, five filed at SCI-Frackville and one at SCI-Huntingdon, none of which requested monetary relief and therefore failed to exhaust Moser's claim for damages. The lone Huntingdon grievance was not appealed to find review, and, therefore, did not exhaust the claims raised herein. For the Court's convenience, the grievances and responses are summarized in the attachment to this brief.

court held exhaustion applies even though the government's administrative

remedies did not provide the relief sought in the lawsuit, i.e., there is no

futility exception.  Until exhaustion is satisfied, the court may not reach the

merits of the claim.  *Id.* at 78. In *Booth v. Churner, supra*, the court held that

exhaustion applies to a use of force claim even though the DOC grievance

procedure did not provide monetary relief.  Since Booth did not utilize

intermediate and final review, this Court's dismissal without prejudice was

affirmed.

The United States Court of Appeals for the Sixth Circuit has adopted a

rule requiring inmates who file suit under Section 1983 to "allege <u>and</u> <u>show</u>

that they have exhausted all available state remedies." *Brown v. Toombs*,

139 F. 3d 1102, 1104 (6th Cir. 1998) (emphasis added), cert denied, 119 S.

Ct. 88 (1998).

> In light of the plain mandatory language of the statute regarding
> exhaustion of remedies, the legislative purpose underlying the
> plain language, and the sound policy on which it is based, this
> Court will henceforth require that prisoners filing Section 1983
> cases involving prison conditions must allege and show that they
> have exhausted all available state remedies.  <u>A prisoner should</u>
> <u>attach to his Section 1983 complaint the administrative decision, if</u>
> <u>it is available, showing the administrative disposition of his</u>
> <u>complaint.</u>

The Sixth Circuit approach in *Brown* was adopted recently by Judge

Conaboy in the case of *Curtis v. Horn*, Civil Action No. 3:00-CV-1149, slip

op. at 7 (M.D. Pa. 12/18/00) (Exhibit C). The United States District Court for the Eastern District of Pennsylvania also adopted the same approach as in *Brown*. In *Iglesias v. Roth*, No. 00-3069, 2000 U.S. Dist. LEXIS 16999 (E.D. Pa. 11/28/00) (Exhibit D), Judge Kelly dismissed without prejudice a *pro se* civil rights action under 42 U.S.C. §1983 because the complaint "merely states that he followed each step of the available administrative procedures, but supplies no evidence to establish the requisite exhaustion of all available administrative remedies prior to filing suit." *Id.* at *10.

Here, as noted in footnote 2 of Judge Kelly's opinion in *Iglesias*, although Moser attached numerous documents to his complaint and submitted a separate packet of exhaustion documents consisting of over 134 pages, these documents fail to prove exhaustion as to the claims against the Huntingdon Defendants. On page 7 of his complaint, Moser admits that he did not exhaust any of his claims as to those Defendants nor did he attach a copy of his appeal to the Secretary's Office of Grievance Appeals. "[Section] 1997e(a) as amended by the PLRA, completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F. 3d 65, 71 (3d Cir. 2000). As Judge Conaboy wisely held in *Curtis v. Horn*, exhaustion is required with respect to <u>each</u> <u>claim</u> in the complaint. Moser's claims against the Corrections Defendants from SCI-Huntingdon

are separate and distinct from those claims against the Corrections

Defendants from SCI-Frackville. As such, dismissal is required.

Furthermore, nowhere does Moser contend that he even requested the

monetary relief he now seeks. As a result, the Third Circuit's opinion in

*Geisler v. Hoffman*, No. 99-1971 (3d Cir. 9/12/00) (unreported) (Exhibit E)

warrants dismissal. In *Geisler*, the court upheld the dismissal of the

complaint of the plaintiff, an inmate, against a private physician, Stanley

Hoffman, M.D. based on 42 U.S.C. §1983, solely because of the failure of

the plaintiff to exhaust his administrative remedies provided for by DC-

ADM 804. The Court of Appeals concluded that *Geisler* had to exhaust the

administrative remedies made available to him by asking for monetary

damages. "To this end, even if *Geisler* had brought his grievances before

the two appellate tiers provided for by DC-ADM 804, exhaustion in that

setting clearly would not have exhausted his current claim for monetary

relief, a claim which he never even began to pursue administratively." *Id.*,

slip opinion at 4. As the court in *Geisler* noted, DC-ADM 804 made awards

of monetary relief available to inmates as of 5/1/98, which is well before

Moser filed the present lawsuit in October 2000, and for that matter, well

before the complaints at issue.

Although the opinion in *Geisler* is not precedential because it is not published, Corrections Defendants submit it because of the persuasiveness of its reasoning. Corrections Defendants respectfully submit that in light of the Third Circuit's strict exhaustion requirements set forth in *Nyhuis v. Reno* and *Booth v. Churner, supra*, the Court of Appeals will, in a published opinion, affirm the persuasive reasoning of *Geisler* and hold that exhaustion requires all inmates to seek <u>all</u> relief available under the Department's grievance system.

THE COMPLAINT MUST BE DISMISSED WITH PREJUDICE BECAUSE THE CORRECTIONS DEFENDANTS ARE NOT MEDICAL PROVIDERS AND ARE INCOMPETENT TO SECOND-GUESS THE DECISIONS OF MEDICAL PROVIDERS FROM WHOM MOSER, BY HIS OWN ADMISSION, HAS RECEIVED EXTENSIVE CONSULTATION AND TREATMENT.

None of the Corrections Defendants is a medical provider. Thus, none of them can be held responsible for refusing to second-guess the decisions of the medical providers who have in fact provided treatment to Moser.

The law governing this area of jurisprudence originates with the Supreme Court's seminal decision in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976). There, the Court held that:

> Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' (citation omitted), proscribed by the Eighth Amendment. This is true whether

> the indifference is manifested by prison doctors in response to the prisoners needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 97 S. Ct. at 291.  Allegations of negligence or malpractice do not state a claim under the Eighth Amendment.  *Id*. at 291-293.

Accordingly, the inmate must allege and prove that the Defendants were "deliberately indifferent to serious medical needs".  Even assuming arguendo that Moser's medical needs were serious, he has not and cannot allege that the Correctional Defendants were deliberately indifferent to those needs, as that term has been defined and interpreted.

In *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994), the Court most recently defined deliberate indifference to require a showing that Defendants have a subjective awareness of a substantial risk of harm to the prisoner.  The Court wrote:

> We reject [the] invitation to adopt an objective test for deliberate indifference.  We hold...that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety....The official must both be aware of facts from which the inference can be drawn that a substantial risk of serious exists, and he must also draw the inference.

*Id*. at 144 S. Ct. at 1979.  (emphasis added).

1.    Deliberate indifference requires "obduracy and wantonness". *Id.*
      quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

2.    The defendant's conduct must be "reckless" or demonstrate a
      "conscious disregard of a serious risk". *Id.*

3.    "[C]ertainly no claim is stated when a doctor disagrees with the
      professional judgment of another doctor.  There may, for example,
      be several acceptable ways to treat an illness." *Rouse v. Plantier*,
      182 F. 3d 192, 197 (3d Cir. 1999); quoting *White v. Napoleon*, 897
      F. 2d 103, 110 (3d Cir. 1990).

4.    Deliberate indifference may be shown if prison officials know of a
      medical need and intentionally refuse to provide it; delay treatment
      for non-medical reasons; or prevent a prisoner from receiving
      needed treatment. *Rouse*, 182 F. 3d at 197.

The deliberate indifference test "affords considerable latitude to
prison medical authorities in the diagnosis and treatment of medical
problems of inmate patients.  Courts will 'disavow any attempt to second-
guess the propriety or adequacy of a particular course of treatment…which
remains a question of sound professional judgment.'" *McAleese v. Owens*,
770 F. Supp. 255, 257 (M.D. Pa. 1991)(McClure, J.) and *Flanagan v.*

*Shively*, 783 F. Supp. 922, 932 (M.D. Pa. 1992), quoting *Inmates of*

*Allegheny County Jail v. Pierce,* 612 F. 2d 754, 762 (3d Cir. 1979).

Moser's claim is legally identical to the claim presented against prison

officials in the case of *Durmer v. O'Carroll*, 991 F. 2d 64 (3d Cir. 1993). In

*Durmer*, the plaintiff was an inmate in the New Jersey Correctional System

who alleged that his prison physician, O'Carroll, the State Commissioner for

Corrections, Fauver, and the Warden of the prison, Barker, were deliberately

indifferent to his serious medical needs. Durmer was incarcerated from

October, 1987 until April, 1989. Prior to his incarceration he had received

extensive physical therapy as a result of a stroke and a motor vehicle

accident. He alleged that after he was incarcerated, defendants deliberately

refused to provide him with physical therapy. Durmer complained to Dr.

O'Carroll about the lack of physical therapy treatment and by the end of the

summer of 1988, he had written letters expressing his complaints to Barker

and Fauver. Durmer filed suit and ultimately the District Court granted

summary judgment in favor of the Correctional Defendants, which was

affirmed by the Third Circuit:

> The only allegation against either of these two defendants was that
> they failed to respond to letters Durmer sent to them explaining his
> predicament. Neither of these officials, however, is a physician and
> neither can be considered deliberately indifferent simply because they

failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.

*Durmer*, 991 F. 2d at 69.

The foregoing mandates dismissal of Moser's complaint against the Correctional Defendants. The Corrections Defendants have discharged their duty. Moser has been seen numerous times by medical professionals at both SCI-Frackville and SCI-Huntingdon who refused to continue him on addictive narcotic medication such as morphine and percocet. Moser's disagreement with that course of treatment cannot be transformed into a deliberate indifference claim against the Corrections Defendants by making conclusory allegations of indifference that are refuted by the very exhibits Moser attached to his complaint.

At his own behest, Moser refused surgery for 140 days starting 4/3/00 for a non-medical reason – parole. *See* Exhibit F. On 8/31/00, Moser signed an "Inmate's Request to Staff Member" (which is one of Moser's exhibits) wherein he stated he "will not accept no [sic] alturnitive [sic] fluids entering my body, such as (A) Blood tranfussion [sic] (B) I.V. fluids or medication (C) feeding tubes (D) needles (or) shots with needles" on the basis of his religion "that of an Jehovah Witness." This document again shows Moser's unwillingness to have surgery since one or more of these procedures would be utilized during surgery.

Further, though not attached as an exhibit, Moser references Dr. Opida's EMG and nerve conduction study done on 10/3/00, just 15 days before suit. This report is attached as Exhibit G. Dr. Opida states Moser's case is "nonsurgical" and "I would like to recommend conservative treatment."

How can it be said that Corrections Defendants have a subjective awareness of a substantial risk of harm, and for purposes of qualified immunity, know that their action violated Moser's rights, when: 1) Moser refused surgery for 140 days for non-medical reasons until 8/24/00; 2) seven days later on 8/31/00, Moser signed, at his own behest, a refusal to accept on religious grounds any of the expected procedures that accompany surgery; 3) every prison doctor consulted has disagreed with surgery and narcotic medication; 4) a non-Department of Corrections physician board certified in psychiatry and neurology who performed EMG and nerve conduction studies 15 days prior to suit recommended conservative treatment; 5) Moser has continually treated with medical professionals who have developed a pain management plan which refuses to enable Moser's dependence on addictive narcotic medications and instead provides Moser with non-addictive analgesics; 6) medical professionals have noted discrepancies between Moser's subjective complaints and his objective physical findings

and the wear pattern on Moser's shoes; and 7) Moser threatens to "fall out" and manipulate his blood sugar if he does not get his desired pain medication?  They cannot.  And for these reasons dismissal is required and costs should be awarded to Defendants.

## THE CORRECTIONAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Corrections Defendants are entitled to qualified immunity because there is no clearly established law now nor at any relevant time that they had an obligation to second-guess the decisions of medical providers who have chosen to pursue conservative treatment over an invasive surgical procedure in the nature of a spinal fusion and who have refused to enable addictive behavior by prescribing addictive narcotic medications for treatment of chronic low back pain.

> The doctrine of qualified immunity 'hold[s] that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine recognizes 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Id.* at 807 (internal quotations and citation omitted).

*Doe v. County of Centre*, 2001 W.L. 214005, 15 (3d Cir. Pa. 3/5/01).

In determining whether an official is entitled to qualified immunity, the Court asks three questions: "(1) Whether the plaintiffs allege a violation

21

of their statutory or constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official knew or should have known that the alleged action violated the plaintiffs' rights. *Id.* citing *Rouse v. Plantier*, 182 F. 3d 192, 196-97 (3d. Cir. 1999).

Following the Supreme Court's lead, the Third Circuit in *Doe, supra*, directed that the right in question must be defined with particularity rather than abstractly. *Id.* Thus, with regard to the spinal fusion claim, the question is whether lay correctional employees have a duty to override the reasoned judgments of trained medical providers who have denied spinal surgery to an inmate who refused that very surgery for 140 days for non-medical reasons. Given the infinite variables entering into the question of which course of treatment is appropriate, the fact that even highly trained experts often disagree on the appropriate course of treatment and the facts outlined above on pages 20-21, which include the fact that a board-certified neurologist examined Moser 15 days before suit and recommended <u>conservative</u> treatment, the only way these Corrections Defendants could be stripped of immunity would be for them to disobey a court order that Moser be afforded a spinal fusion. Until that happens under the particular facts of his case, the Corrections Defendants are entitled to qualified immunity. <u>A</u>

fortiori, if "no claim is stated when a doctor disagrees" with another doctor, *Rouse*, 182 F. 3d at 197, no claim is stated against lay persons who are incompetent to second-guess those decisions.

The same holds true with regard to Moser's claim regarding pain management and treatment for his HCV and alleged cancerous lymphoid. Again, Corrections Defendants have discharged their duty by granting Moser open access to medical care.  Exhibits H through J show that Moser had x-rays and a CAT Scan of his neck on 3/10/00 and 4/19/00, respectively, and was seen by an outside oral and maxillofacial surgeon on 6/19/00, all for the alleged cancerous lymph node.  Corrections Defendants are thus entitled to qualified immunity with regard to all claims.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiff's complaint against the

Corrections Defendants must be dismissed with prejudice and costs awarded

to the Defendants.

Respectfully submitted,
PA Department of Corrections

By:    _____
Shawn P. Kenny
Assistant Counsel
Attorney I.D. No. 51797
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444

Dated:    5/11/01

## Attachment to Corrections Defendants' Brief in Support of Motion to Dismiss

### Summary of Grievances and Responses

1. FRA-0001-00 – dated 12/23/99
   Complains he was cut off of psychotropic medications by his treating psychiatrist, Dr. Newton. Defendant Nauroth responded on 1/11/00, indicating that the decision to detoxify Moser was made by 3 physicians: Maue, O'Conner and Newton due to the addictive qualities of benzodiazepines. Note that Defendant Nauroth granted a personal interview despite Moser's statement that it was requested only to make sure she was "officially involved". No appeal from Nauroth's response was filed with Superintendent Chesney or to the Secretary's Office as required by DC-ADM 804.

2. FRA-0007-00 – dated 1/8/00
   Complains that he was denied pain medications without Tylenol and that he was not provided HCV treatment. Defendant Nauroth responded on 1/11/00, and explained that medication decisions, including the refusal of addictive morphine, were made by physicians and that the decision with regard to Moser's hepatitis C treatment is complex and has not yet been made. Further, Moser was told that his liver enzymes were much better than they were when he first came there in 1991.
   Moser's appeal to Superintendent Chesney was addressed on 1/19/00, and indicated in part that medical decisions were made by the treating physicians.
   No appeal was filed to the Secretary's Office in accordance with DC-ADM 804.

3. FRA-0028-00 – dated 1/25/00
   Complains he slipped and fell on 1/20/00, which caused an increase in pain and was denied percocet, an addictive narcotic medication.
   Nauroth responded on 1/27/00, and indicated that physicians, not administrators, have made decisions regarding his medications and that Moser is merely disappointed because the physicians have not ordered what he wants. Note that Moser was also hospitalized in the infirmary at SCI-Mahanoy for evaluation and that no additional injury was noted in Moser's chart.
   Moser's appeal was ultimately denied by the Chief Hearing Examiner, Robert Bitner, on 3/7/00.

4. FRA-0102-00 – dated 3/24/00

Moser complained that he needed a liver biopsy and medications to treat his HCV.

Nauroth responded on 3/27/00, and indicated that a biopsy is not routine and is done on a case specific basis. Nauroth also explained that the medications have significant serious side affects posing problems with patients who are receiving treatment for psychiatric and substance abuse problems, as in the case of Moser.

Note: Moser did not attach a copy of the Chief Hearing Examiner's letter to him dated 5/31/00, which denied this appeal.

5. FRA-0294-00 – dated 6/12/00

Moser complains that he is legally disabled under ADA and that SCI-Frackville did not provide a reasonable accommodation in the form of a shower and single cell housing.

Nauroth responded to this on 6/14/00, at which time she advised Moser that he never requested accommodation as directed, that his record contains no documentation that he is "legally disabled", and that he has failed to specify which major life activities are affected and what accommodation is requested.

Superintendent Chesney responded to this grievance on 6/27/00, at which time Moser was advised that he has made "no application for such accommodation despite having been provided the means to do so (twice)." Moser was also advised that he has the ability to cleanse himself with extra showers; regarding single cell housing, he was directed to discuss that with his unit manager.

This grievance was also addressed by Bruce Smith, the Deputy Superintendent for Centralized Services, by way of a memo to Moser dated 7/3/00, which also addressed Moser's request slips dated 6/26/00 and 6/28/00. Corrections Defendants direct the Court to the content of Deputy Smith's 3 page memo to Moser which advises Moser, among other things, that his claim that he was provided "no treatment at all" for a "stone and infection in the throat gland" "is a lie" in that antibiotics and a regimen of massage were prescribed; that Moser was in fact seen by a neurosurgeon for his back pain and, as noted in other exhibits attached to Moser's complaint, Moser refused the proposed surgery; that the neurosurgeon's recommendation for pain management does not constitute an order for that treatment, moreover, the request for pain management by morphine was Moser's request; that a pain management plan was in fact implemented by a multidisciplinary team "which includes powerful, but less

physiologically addictive, drugs"; that despite Moser's claim that his "rights" under the ADA have been violated, Moser failed to make a specific cogent request for a reasonable accommodation and there are and have been incontinent inmates at SCI-Frackville which had no problem accommodating their needs.

Moser did not attach Mr. Bitner's letter to him dated 7/20/00, which denied the appeal, in part, because it was "untimely".

6. HUN-0136-00 – dated 8/29/00

Moser claims he is "being refused a spine fussion [sic] operation", a neurosurgical consult and "effective pain medication, (i.e. with less Tylanol [sic] because I have liver disease)." He contends that this is "medical malpractice and neglect".

Defendant Yarger, the Health Care Administrator at SCI-Huntingdon, responded to this grievance on 9/15/00, and indicated in part, that Moser "on multiple occasions, since 8/18/00, threatened legal action if narcotic medications are not ordered for" him; that Moser repeatedly refused diets as prescribed; that on 8/30/00, Moser was extensively examined by Dr. Mohadjerin in which he found that Moser had been on chronic pain medication, that his weight was 335 pounds, which was considered obese, and that on examination, Moser's back, gait stance and two pair of shoes that were issued in March of 2000, showed "no pattern consistent with a limp"; that there was no indication for treatment of chronic pain with an addictive narcotic medication; that Moser refused a diet after being told that weight loss and exercise may help with pain control; that an EMG and nerve conduction study were ordered and completed since; that Moser was seen by Dr. Shumaker on 9/1/00, at which time Moser told the doctor that he was not interested in surgery while he was in prison and would wait until he got out approximately 9 months to have his surgery in Arizona; that on 9/9/00, Moser saw Dr. Shumaker and stated in part "if you aren't going to give me pain pills I might as well have my surgery here"; that on 9/11/00, Moser was seen by Dr. Bardell at which time he became belligerent, accusatory, aggressive and demanding" and left before the examination was completed; that on 9/12/00, Moser was seen by R.N. Williams and threatened to "fall out" and to manipulate his blood sugar, if he did not obtain the pain medication; that on 9/15/00, Moser was seen by P.A.C. Cain, whose examination was inconsistent with Moser's subjective complaints and his request to work in the building trades program; that Moser's care will be driven by his objective findings as opposed to purely

subjective complaints, and that the grievance was found to be "without merit due to the fact that you have not been refused medication and you have not been refused a back operation under false pretenses."

Moser's exhibits contain a copy of an appeal to the Superintendent dated 9/21/00, however, Moser admits that he did not exhaust this grievance: "but Moser push [sic] forward to exhaust remedies at SCI-Huntingdon as well only to meet with road blocks which violate all DOC policy and due process rights. And make it impossible to exhaust remedies at Huntingdon, as it is there [sic] belief that if I can't exhaust, the Honorable Court won't hear this civil action." (Complaint, page 7)

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date served a copy of the below-referenced document(s) upon the person and in the manner indicated below:

Service by first class mail addressed as follows:

Jeffery P. Moser, BE-4713
SCI-Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112

James D. Young, Esquire
P.O. Box 1245
Harrisburg, PA 17108-1245
Counsel for Defendants Bardel, Mohadjern, Shumaker and Pollack.

Corinne N. Driver
Clerk Typist II
PA Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444
Fax: (717) 975-2217

Dated: 5/11/01

Re:  Corrections Defendants' Brief in Support of Motion to Dismiss Plaintiff's
     Complaint
     USDC-MD docket no. 1:00-CV-1846