*See Attachment*

(42)
1-18-0[ ]
sc

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY P. MOSER,  :
  :
    Plaintiff,  :
  :  CIVIL NO. 1:CV-00-1846
    v.  :
  :  (Judge Caldwell)
KENNETH KYLER, et. al,  :
  :
    Defendants  :

FILED
JAN 17 2002
PER _____
HARRISBURG, PA.    DEPUTY CLERK

M E M O R A N D U M

I. Introduction.

    Jeffrey Paul Moser, a former state inmate currently on parole, filed this *pro se* civil rights action pursuant to 42 U.S.C. ¶ 1983 alleging violations of his Fifth, Eighth and Fourteenth Amendment rights. The events giving rise to the complaint occurred while Moser was confined at SCI-Frackville and SCI-Huntingdon. Along with his complaint, Plaintiff submitted an application requesting leave to proceed *in forma pauperis* which was granted.

    Named as defendants are various employees of the Pennsylvania Department of Corrections and of Wexford, Inc., the contract medical-care provider at SCI-Huntingdon. The following Corrections employees are named: Dennis R. Erhard, Deputy Secretary for the Eastern Region; Kenneth Kyler, SCI-Huntingdon's Superintendent; Diana Baney, SCI-Huntingdon's Grievance Coordinator; Pat Yager, SCI-Huntingdon's Medical Administrator; Joseph W. Chesney, SCI-

Certified from the record
Date 1/17/02
Mary E. D'Andrea, Clerk
Per _____
Deputy Clerk

Frackville's Superintendent, Linda Nauroth, SCI-Frackville's Medical Administrator. The following Wexford employees are named: Dr. Bardell, SCI-Huntingdon's Medical Director; Dr. Mohadjerin, former SCI-Huntingdon's Medical Director; Dr. Shumaker; and Caroll Pollack, Wexford Inc. Administrator. Moser also names Dr. Robert O'Connor, SCI-Frackville's Medical Director and William Ward, a member of the Pennsylvania Board of Probation and Parole as defendants.[1]

Moser alleges the defendants were deliberately indifferent to his various medical needs. Moser suffers from the following ailments which were allegedly ignored, or improperly treated, by defendants: (1) a back injury requiring a partial fusion of his lumbar spine; (2) chronic pain associated with his back problem; (3) Hepatitis C; and (4) "cancer of a limpnoid (sic) and stones in his gland in the throat." See Doc. 1. Moser seeks declaratory and injunctive relief in addition to compensatory and punitive damages from all defendants.

Presently pending before the Court are two motions to dismiss, one by the Corrections defendants and the other by the Wexford defendants. Both sets of defendants move to dismiss the complaint

---

[1] Although Moser has named Dr. O'Connor and William Ward as defendants, it appears they were not served with a copy of the complaint. However, for the reasons discussed, infra, the complaint against these individuals will be dismissed by the Court, sua sponte, for failure to state a claim.

based on Moser's failure to exhaust available administrative remedies. In addition, the Corrections defendants proffer a second ground for relief, that the facts as asserted by Moser do not state an Eighth Amendment claim against them of deliberate indifference to a serious medical need. All parties have submitted documents in connection with their filings.[2]

For the reasons that follow, both motions to dismiss will be granted. We will also, <u>sua</u> <u>sponte</u>, pursuant to 28 U.S.C. 1915, dismiss Moser's claims against Dr. O'Connor, the treating physician at SCI-Frackville, and William Ward, for plaintiff's failure to state a claim against these defendants. Additionally, as the pending motions to dismiss are dispositive, all remaining motions in this case will be dismissed as moot.[3]

---

[2] All sides have submitted exhibits in support of and in opposition to the pending motions. The court has not relied upon those documents in resolving the motions to dismiss and, therefore, was not required to treat the motions as one for summary judgment and so notify the parties. See Fed. R. Civ. P. 12(b). The Court has based its decision upon a review of the complaint and documents submitted by Moser with his complaint. See Doc. 11.

[3] Other motions pending in this case are: two motions for reconsideration of this court's February 15, 2001, Order denying Moser's request for the appointment of counsel (Docs. 21 and 32), a motion to compel service upon Dr. Opida (Doc. 28), plaintiff's motion (Doc. 34) to file a "traverse" to Corrections defendants' response to his motion to reconsider appointment of counsel, and an unbriefed motion for a protective order filed by plaintiff in which he seeks relief against a non-party (Doc. 41).

II. <u>Background</u>.

The following facts are gleaned from Moser's complaint and accompanying documents. (<u>See</u> Docs. 1-3). On June 1, 1999, Moser was transferred from a Federal Bureau of Prisons medical center to the Pennsylvania Department of Corrections. At that time Moser was in "immediate" need of a spinal fusion and narcotic pain management. Moser also suffers from Hepatitis C and possible throat cancer. Moser contends his spinal condition qualifies him as medically disabled as defined by the Americans with Disabilities Act.

While housed at the State Correctional Institution at Frackville ("SCI-Frackville"), Moser was denied proper medical care for his back, Hepatitis C, possible throat cancer and denied effective pain management. SCI-Frackville's Health Care Administrator, Linda Nauroth, "repeatedly refused [him] medical treatment on the instruction of Dr. Robert J. O'Conner." (Doc. 1, p. 7).

Documents submitted by Moser suggest he has been on "mental health" and "anxiety" medications since the 1980s and that he is a physically large man whose weight aggravates his back ailments. While at SCI-Frackville, Moser refused a medically prescribed diet as a means to alleviate some of his discomfort. Instead, Moser repeatedly "demand[ed]" specific narcotic pain prescriptions. When

-4-

Moser's SCI-Frackville treating physician authorized surgery to correct Moser's lumbar spine problems, Moser refused the recommended procedure. Moser states that "Frackville did at minal (sic) give me some form of pain medication, though ineffective." (Doc. 1).

As for his "possible throat cancer," documents submitted by Moser acknowledge that he has been seen at SCI-Frackville by an oral surgeon and prescribed antibiotics and massage for an infection. Although the oral surgeon recommended an E.N.T. consultation, Dr. O'Connor did not believe the consultation was necessary as there was no evidence of any gland malfunction. Moser's final disagreement with the SCI-Frackville physician relates to his suitability for Alpha Interferon and Ribavirin treatment for his Hepatitis C. Moser charges the SCI-Frackville defendants' treatment, or lack thereof, constitutes "gross medical neglect." Other than noting Superintendent Chesney and Deputy Commissioner Erhad's role in the administrative grievance process for the events that allegedly occurred at SCI-Frackville, Moser makes no specific allegations as to their involvement in the management of his medical care. Moser has submitted documents demonstrating his exhaustion of the medical issues raised with respect to his stay at SCI-Frackville.

At some point prior to August 17, 2000, Moser was transferred from SCI-Frackville to SCI-Huntingdon. The Department of Corrections contracts with Wexford Inc. to provide medical services to inmates at this institution. Moser suggests that Wexford physicians allowed monetary concerns to dictate his medical treatment rather than medical necessity. Moser claims Wexford defendants repeatedly ignored the medical advice of consulting neurosurgeons who recommended oxycotin, a strong narcotic pain medication, and surgery as remedial treatment of his degenerative discs and chronic back pain. Plaintiff avers that all pain medication was withheld from him while at SCI-Huntingdon. He claims Dr. Shumaker initially misunderstood his concerns over surgery, thought he was not interested in surgery and prescribed pain medication for him instead. Upon learning of this apparent misunderstanding, Moser rectified the situation by telling Dr. Shumaker that he did want the operation as soon as possible because the pain medication only offered a limited amount of relief. Moser claims Dr. Shumaker then became angry and "cut off" all of his pain medications.

Dr. Mahaderin, the former Medical Director for Wexford at SCI-Huntingdon, also refused Moser any pain management or treatment, noting that an examination of the soles of his shoes did not support Moser's complaints. Moser states Dr. Mahaerin was

-6-

ultimately terminated because of medical malpractice which resulted in the death of a prisoner.

On September 11, 2000, after meeting with the new acting Medical Director, Dr. Bardell, Moser was again denied any "treatment (or) effective pain management at all, none." (Doc. 1). After receiving an E.M.G. test on September 14, 2000, Moser claims a specialist named Dr. Opida told Corrections Officers Harmer and Rhone that he was "in extreme pain and needed medical attention." While mentioned in the text of the complaint, Moser does not identify Dr. Opida as a party to this action.

Eight days later, Dr. Shumaker received Moser's E.M.G. test results which noted new abnormalities in the region of his lumbar spine. Moser denies any problems with vertebrae L2 through L5, prior to his state incarceration, and blames his deterioration on the lack of appropriate treatment by the medical care providers at SCI-Frackville and SCI-Huntingdon. When called in by Dr. Reiners to discuss the results of his E.M.G., Moser contends he was referred to another specialist as a stall tactic for expending the monetary resources for the necessary back surgery. He also states Dr. Reiners re-ordered pain medications for him but claims Dr. Bardell rescinded the prescription and directed that Moser was not to receive "pain management and to let [him] suffer regardless of all the medical facts." (Doc. 1, p. 11).

-7-

Moser claims that the Corrections Health Care Administrator, Ms. Yager, and the Wexford Administrator, Caroll Pollack, were both "aware of the medical indifference and retaliation situation" but will not address the issues. (Doc. 1, p. 12). The first time Moser verbally grieved his complaints regarding his medical care with Superintendent Kyler was "in the yard" at SCI-Huntingdon. He claims Kyler stated that the medical contractors were "just tring (sic) to save money" and advised him to seek the assistance of Mr. Williamson which he did to no avail. Moser does not assert that Superintendent Kyler, Ms. Baney or Ms. Yager interfered with prescribed medical care.

When Moser filed his complaint, he supplied the Court with a multitude of documents demonstrating his efforts to exhaust available administrative remedies. See Docs. 3 and 4. He claims to have exhausted all available administrative remedies with respect to his treatment at SCI-Frackville. However, he claims that SCI-Huntingdon's Grievance Coordinator, Diana Baney, "never returned" grievances, never "answered" them and/or ignored them with the intent to "stall" his ability to file a civil rights suit regarding the events complained of. He does, however, identify one SCI-Huntingdon grievance which was accepted by Baney, No. 0136-00. In his complaint, filed October 18, 2000, Moser claims he appealed this grievance to Superintendent Kyler but "to date has never been

-8-

answered." (Doc. 1, p. 12). However, in his brief in opposition to defendants' motion to dismiss, Moser acknowledges that Kyler did respond to this appeal, but in an untimely manner. (See Doc. 33, p. 8). He claims that he continued his exhaustion efforts of this appeal by appealing to the Chief Hearing Examiner, Robert Bitner, who never responded. Moser does not offer any evidence to support his exhaustion efforts with respect to his final appeal. He also does not provide any documentation that he pursued SCI-Huntingdon's failure to respond to, or accept his grievances, beyond the institutional level.

III. Standard of Review.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993), cert. denied, 510 U.S. 1042(1994).

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the Plaintiff's allegations. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.

-9-

1996), the Third Circuit added that when considering a motion to dismiss based on failure to state a claim, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997). Finally, it is additionally well-settled that pro se complaints should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court will now discuss the Corrections defendants' and the Wexford defendants' motions in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IV. <u>Discussion</u>.

The defendants argue that they are entitled to an entry of dismissal, <u>inter alia</u>, on the basis that: (1) Moser failed to exhaust his administrative remedies with respect to his claims at SCI-Huntingdon; and (2) plaintiff's complaint fails to state a constitutional claim against any Corrections defendant as they are not responsible for second guessing medical care provided to inmates by licensed physicians. We will address each issue with respect to the Pennsylvania Department of Correction employees and Wexford employees in turn.

A.  <u>Exhaustion Requirements</u>

Both sets of defendants contend that Moser's complaint should be dismissed for failure to exhaust available administrative remedies. Based on the facts presented in the complaint and accompanying documents, it appears that Moser did complete his available administrative remedies with respect to his medical treatment at SCI-Frackville. Therefore, this claim will survive an exhaustion challenge. We thus turn to the issue of Moser's exhaustion of his Eighth Amendment claims concerning his treatment at SCI-Huntingdon.

Prisoners must exhaust administrative remedies before filing suit under federal law for claims arising from prison conditions. As 42 U.S.C. § 1997e(a) provides:

-11-

> No action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other
> correctional facility until such administrative
> remedies as are available are exhausted.

Prison conditions include a claim based on medical treatment. See Booth v. Churner, 206 F.3d 289 (3d Cir. 2000)(excessive-force claim is a claim based on prison conditions). Section 1997e(a) "makes no distinction between an action for damages, injunctive relief, or both." Fortes v. Harding, 19 F. Supp. 2d 323, 325 (M.D. Pa. 1998). Exhaustion is mandatory, regardless of whether the administrative remedy provides the relief sought in the federal action, see Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000); Rankins v. Murphy, 1998 WL 767441 (E.D. Pa.), and it must occur before the filing of the federal case, or the action will be dismissed even if remedies are exhausted while the federal suit is pending. See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998).

Accordingly, in the instant case, Moser must establish that he exhausted all available administrative remedies before initiating his § 1983 civil rights action. He cannot do so.

It appears that Moser acted too hastily in filing his current litigation with respect to issues raised in the Huntingdon grievance (number 0136-00) as he admits to filing it before receiving a response from Superintendent Kyler. (Doc. 1, p. 12). By his own admission, Moser then was in the process of exhausting

-12-

his available administrative remedies during the course of this litigation. (Doc. 33).

The Department of Corrections' grievance procedure contemplates several tiers of review and the Grievance Review System is not exhausted when an inmate files a grievance and then takes no other action through established channels when a grievance is not resolved to his or her satisfaction. To the extent Moser claims that Superintendent Kyler's response to his grievance appeal was late, and thus he could not have exhausted prior to initiating this complaint, that argument in itself does not excuse him from the exhaustion requirement. Plaintiff's next step prior to filing this § 1983 action was to appeal the Facility Manager's decision, or lack thereof, to the Chief Hearing Examiner. Moser denies taking this step before filing this action. Moser acknowledges filing his appeal with the Chief Hearing Examiner after initiating his complaint. (Doc. 33). This is unacceptable. Exhaustion of administrative remedies must occur before filing an action in federal court. Nyhuis v. Reno, 204 F.3d at 67; Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998), cert. denied, 526 U.S. 1133 (1999); Hassine v. Horn, Civ.No. 4:CV-97-1621, slip op. at 10-12 (M.D. Pa. Sept. 29, 1998)(Muir, J.). Thus, Moser's complaint

with respect to claims at SCI-Huntingdon will be dismissed for failure to exhaust available administrative remedies.[4]

    B.    <u>Moser's SCI-Frackville Eighth Amendment Claims</u>.

"A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." <u>Estelle v. Gamble</u>, 429 U.S. at 107. Furthermore, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993), and "that mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. <u>White v. Napoleon</u>, 987 F.2d 103, 110 (3d Cir. 1990). Furthermore, in <u>Durmer</u>, <u>supra</u>, the Third Circuit added that a nonphysician defendant can not be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. <u>Id</u>., 991 F. 2d at 68.

In the present case, none of the SCI-Frackville defendants, or other corrections defendants, are physicians. Linda Nauroth, Health Care Administrator at SCI-Frackville is accused of refusing Moser "medical treatment on the instruction of Dr. Robert J.

---

[4] It is important to remember that dismissal of this claim is without prejudice and that if Moser wishes to refile this claim in a new action, he would not be required to exhaust administrative remedies as prerequisite as he is no longer incarcerated.

-14-

O'Connor" (Doc. 1, p. 2 of 9).  Ms. Nauroth cannot, and does not, prescribe medication or make medical decisions regarding the appropriate course of treatment for Moser's back problems, Hepatitis C, or his alleged throat cancer; only a physician can make these determinations.[5]  Moreover, to succeed in an action of inadequate medical treatment, Moser must show "more than negligence; he must show 'deliberate indifference' to a serious medical need."  Durmer, 991 F.2d at 67.  There are no assertions that Nauroth, or any other Corrections defendant, was "deliberately indifferent" to Moser's medical needs.  On the contrary, the documents Moser submits indicate that the Corrections defendants responded to his complaints and ensured that he was seen by physicians and specialists as directed by Moser's treating physicians.  Moser does not proffer any evidence, relating to any

---

[5] To the extent that Moser sought to file a § 1983 claim against Dr. O'Connor relating to his treatment at SCI-Frackville, he fails to state a claim. Documents submitted by Moser in connection with his complaint indisputably reveal that he was provided with medical care during his incarceration at SCI-Frackville.  Moser's many exhibits demonstrate that the prison physician recommended, and authorized, his sought-after spinal fusion, which he then refused.  His complaint also admits that he received medical treatment for his pain, although he asserts it was minimally effective.  (Doc. 1, p. 7 of 9).  Therefore, since mere disagreement with a doctor's diagnosis or recommended treatment does not rise to the level of a constitutional violation, there is no claim against Dr. O'Connor.  Similarly, malpractice, i.e., negligence, on the part of a physician is not actionable under § 1983.  Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989). Therefore, any claim against Dr. O'Connor will be dismissed.

Corrections defendant, that would suggest that they should have known that his medical treatment by the institutional physicians may have been inadequate. Similar reasoning applies to Moser's claims against Pat Yager.

To the extent that Moser attempts to hold the non-medical Corrections defendants (those other than Nauroth and Yager) liable for his inadequate health care on the theory they were alerted to his claims via the grievance system, he cannot do so. Plaintiff does not make factual allegations involving Superintendent Chesney, Superintendent Kyler, Diana Baney, or Deputy Commissioner Erhard concerning interference with his physician-directed medical care. In fact, he does not cite their involvement at all in his medical care except to note that he alerted them to his dissatisfaction and disagreement with the respective treating physician's care via the use of the grievance system, and their unsatisfactory response to his allegations. However, the failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994), cert. denied, 514 U.S. 1022 (1995); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.), cert. denied, 488 U.S. 898 (1988); McGuire v. Forr, Civ. A. No. 94-6884, 1996 WL 131130, at *1(E.D. Pa. Mar.21, 1996), aff'd., 101 F.3d 691 (3d Cir. 1996); Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa.1992), aff'd., 980 F.2d 722 (3d Cir.), cert. denied,

-16-

510 U.S. 829 (1993). For these reasons, Moser's claims against O'Connor, Nauroth, Yager, Chesney, Kyler, Baney, and Erhard are dismissed.

V. Claims against Defendant William Ward as a Member of the Pennsylvania Board of Probation and Parole.

Defendant Ward has been identified as a defendant by Moser, but plaintiff alleges no factual allegations of any unconstitutional acts on Ward's part. To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Therefore, Moser fails to state a claim against this defendant.

VI. Conclusion.

Based upon Plaintiff's own pleading and records of exhaustion, we find Moser has failed to allege that he has exhausted all available administrative remedies with respect to all claims, against all defendants, with respect to his medical care at SCI-Huntingdon. Thus, the Wexford defendants' motion to dismiss will

-17-

be granted. For similar reasons, all claims against SCI-Huntingdon employees, Kenneth Kyler, Diana Baney and Pat Yager, will be dismissed. Moser's claims against the remaining corrections defendants relating to his health care while housed at SCI-Frackville will be dismissed for failure to state a claim. An appropriate order is attached.

*[signature]*
WILLIAM W. CALDWELL
United States District Judge

Date: January 17, 2002

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY P. MOSER, :
:
      Plaintiff, :
: CIVIL NO. 1:CV-00-1846
   v. :
: (Judge Caldwell)
KENNETH KYLER, et. al, :
:
      Defendants :

O R D E R

AND NOW, this 17th day of January, 2002, for the reasons set forth in the accompanying Memorandum, it is hereby ordered that:

1. The Wexford Inc. defendants' motion to dismiss plaintiff's complaint for his failure to exhaust administrative remedies (doc. 18) is granted.

2. The Corrections defendants' motion to dismiss (doc. 19) is granted.

3. The complaint (doc. 1) is dismissed, sua sponte, for failure to state a claim upon which relief may be granted against defendants Dr. O'Connor and William Ward.

4. Due to the dismissal of Moser's complaint, all pending motions (docs. 21, 28, 32, 34, and 41) are dismissed as moot.

5. The Clerk of Court shall close this case.

6. Any appeal taken from this order would not be in good faith.

[FILED JAN 17 2002 — HARRISBURG, PA — PER DEPUTY CLERK]

/s/ William W. Caldwell
WILLIAM W. CALDWELL
United States District Judge